*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 26, 2017                    521559
_____

In the Matter of ANGELA F.,
                    Appellant,

        v
                                        MEMORANDUM AND ORDER
ST. LAWRENCE COUNTY DEPARTMENT
    OF SOCIAL SERVICES,
                    Respondent.

(And Five Other Related Proceedings.)
_____

Calendar Date:  November 16, 2016

Before:  Egan Jr., J.P., Lynch, Rose, Clark and Aarons, JJ.

_____

        Susan Patnode, Rural Law Center of New York, Castleton
(Cynthia Feathers of counsel), for appellant.

        David D. Willer, St. Lawrence County Department of Social
Services, Canton, for respondent.

        Reginald Bedell, Elizabethtown, attorney for the children.

_____

Clark, J.

        Appeals from two orders of the Family Court of St. Lawrence
County (Morris, J.), entered August 6, 2015, which dismissed
petitioner's applications, in proceedings pursuant to Family Ct
Act articles 10 and 6, to, among other things, enforce a prior
order of visitation.

These appeals present the Court with a tragic situation in which Family Court's repeated judicial errors have contributed to the prolonged separation of petitioner (hereinafter the mother) and two of her children (born in 2003 and 2005) (Matter of Desirea F. [Angela F.], 137 AD3d 1519 [2016]; Matter of Desirea F. [Angela F.], 136 AD3d 1074 [2016]; Matter of Dakota F. [Angela F.], 110 AD3d 1151 [2013], lv denied 22 NY3d 1015 [2013]; Matter of Dakota F. [Angela F.], 92 AD3d 1097 [2012]).  The mother's son and daughter were adjudicated to have been neglected in 2004 and 2006, respectively.  The children were removed from the mother's care and placed in foster care in December 2007 and they were again adjudicated to be neglected in 2008.  While the children were initially placed in several different foster homes, they have continuously resided together with the same foster parents since 2011.  In September 2009, respondent submitted a permanency hearing report recommending that the permanency goal be changed to placement for adoption, and, after a hearing, Family Court (Potter, J.) erroneously imposed the concurrent and inherently contradictory permanency goals of return to parent and free for adoption (Matter of Dakota F. [Angela F.], 92 AD3d at 1098-1099). In 2010, respondent commenced permanent neglect proceedings against the mother, but the underlying permanent neglect petitions were subsequently withdrawn and replaced with petitions seeking to terminate the mother's parental rights to the children based on mental illness (see Social Services Law § 384-b [4] [c]).  In September 2011, following a hearing, Family Court adjudicated the mother to be a mentally ill parent unable to parent her children, and terminated her parental rights to the children.  In October 2011, the mother last visited with the children.

In October 2013, upon the mother's appeals, this Court reversed the orders terminating the mother's parental rights and dismissed the underlying petitions (Matter of Dakota F. [Angela F.], 110 AD3d at 1154).  Shortly thereafter, the mother commenced the instant Family Ct Act article 6 and article 10 proceedings seeking, in essence, to reestablish contact with the children. In January 2014, notwithstanding the mother's request that she be permitted contact – in any form – with the children pending a hearing on her petitions, Family Court (Morris, J.) refused such request on the basis that the mother had not had contact with the

children "in excess of two years" and did not allow any form of contact.

Meanwhile, during the pendency of these proceedings, respondent commenced permanent neglect proceedings against the mother seeking to again terminate her parental rights to the children.[1]  A permanency hearing was held in February 2014 and, in June 2014 orders, Family Court changed the permanency goal from return to parent to free for adoption and such goal was continued in permanency orders issued in September 2014. Emphasizing the inadequacy of the record, the absence of meaningful efforts on the part of respondent and Family Court's failure to even inquire as to the mother's current situation, this Court ultimately reversed so much of the June 2014 and September 2014 permanency orders that modified the permanency goal (Matter of Desirea F. [Angela F.], 136 AD3d at 1076-1077).

In September 2014, roughly eight months after the mother had commenced the instant proceedings, Family Court began hearing proof on the petitions relating to the children.[2]  The hearing continued piecemeal over the course of seven months and, on March 16, 2015, the proof was closed.  However, the parties were given time to submit written summations.  On June 26, 2015, roughly 20 months after the mother filed the instant petitions, Family Court dismissed the petitions in a bench decision, and, on August 6, 2015, orders were entered thereon.  The mother appeals.[3]

_____

[1]  At the time of oral argument, the permanent neglect proceedings were still pending.

[2]  In June 2014, Family Court began hearing proof on other pending petitions relating to two of the mother's other children; one of these children resides with the mother and her husband, while the other child resides with her paternal grandmother, with whom the mother and the child's father share joint legal custody.

[3]  The mother's notices of appeal purport to appeal from Family Court's June 2015 bench decision, from which no appeal lies (see CPLR 5512 [a]; Family Ct Act § 1112).  Nevertheless, in an exercise of our discretion, we will view the appeals as having

The mother argues that Family Court should have permitted her some form of contact with the children following this Court's October 2013 determination reversing the orders that terminated her parental rights to the children.[4]  At the outset, we must address Family Court's flawed understanding of the legal effect of our October 2013 order reversing the orders that terminated the mother's parental rights to the children.  Inexplicably, Family Court incorrectly and repeatedly stated on the record that there was no declaration by this Court that the mother's parental rights or any prior orders were reinstated and that the mother was mistaken that her parental rights had been restored.

It is fundamental that the reversal of an order upon appellate review restores the party who prevailed on appeal to the position that he or she enjoyed prior to entry of the order appealed from (see Taylor v New York Life Ins. Co., 209 NY 29, 34 [1913]; Doomes v Best Tr. Corp., 126 AD3d 629, 630 [2015]; 5 NY Jur 2d, Appellate Review § 834; 10A Carmody-Wait 2d § 70:504).  Contrary to Family Court's statements, this Court's October 2013 order did reinstate the mother's parental rights and restored her to the position that she was in prior to the erroneous termination of her parental rights.  It appears from the record that, at such time, the mother had been afforded supervised visitation with the children once a week.  Accordingly, upon the reinstatement of her parental rights, the mother was, at a minimum, entitled to the restoration of the visitation that she was afforded prior to the termination, unless it could be demonstrated by respondent that there were "'compelling reasons and substantial evidence that such visitation would be detrimental or harmful to the child[ren]'s welfare'" (Matter of Victoria X., 34 AD3d 1117, 1118 [2006], lv denied 8 NY3d 806

_____

been validly taken from the August 2015 orders (see CPLR 5520 [c]; Smith v State of New York, 121 AD3d 1358, 1358 n [2014]).

[4]  The mother raises no arguments on appeal with respect to the dismissal of her violation and custody petitions and, as such, has abandoned any challenges with respect thereto (see Matter of Lynn TT. v Joseph O., 143 AD3d 1089, 1091 [2016]; Matter of Iyanna KK. [Edward KK.], 141 AD3d 885, 886 [2016]).

[2007], quoting Matter of Sullivan County Dept. of Social Servs. v Richard C., 260 AD2d 680, 682 [1999], lv dismissed 93 NY2d 958 [1999]; see Matter of Paige WW. [Charles XX.], 71 AD3d 1200, 1204 [2010]).

Although the mother commenced these proceedings shortly after this Court's October 2013 order reinstating her parental rights,[5] Family Court improperly imposed upon the mother the burden of proving that visitation would be in the children's best interests. Visitation with a noncustodial parent is presumed to be in a child's best interests (see Matter of Duane FF. [Harley GG.], 135 AD3d 1093, 1094 [2016], lv denied 27 NY3d 904 [2016]; Matter of Luka OO. [Travis PP.], 114 AD3d 1056, 1057 [2014]). Rather than imposing the burden of proof on the mother, Family Court should have placed the burden on respondent to demonstrate that visitation would be detrimental or harmful to the children (see generally Family Ct Act §§ 1030 [c]; 1082 [4]). Together, Family Court's many procedural missteps and misapplications of law, including its failure to apply the proper burden of proof (see Matter of Lonobile v Betkowski, 261 AD2d 829, 829 [1999]) and its reluctance to promptly adjudicate the mother's applications for visitation over the 20 months in which the mother's parental rights remained intact, require that the matter be remitted for a new hearing.

Even if we were to reach the merits of the mother's petitions, we would still find remittal necessary. Family Court improperly based its denial of visitation, in part, on the length of time that had passed since the mother had contact with the children. However, the separation was not the result of the mother's lack of interest or effort (cf. Matter of Male Infant L., 61 NY2d 420, 429 [1984]; Matter of Dickson v Lascaris, 53

---

[5]  Although not expressly stated in this Court's October 2013 order, because the mother's parental rights were reinstated and the children remained in the care and custody of respondent, the matter should have been restored to Family Court's calendar immediately after this Court's October 2013 order so that Family Court could address, among other things, the issue of the mother's visitation.

NY2d 204, 209-210 [1981]; Matter of Sanjivini K., 47 NY2d 374, 381-382 [1979]; Matter of Burghdurf v Rogers, 233 AD2d 713, 714-715 [1996], lv denied 89 NY2d 810 [1997]). In fact, the mother has fought to have contact with the children since their placement in the care and custody of respondent. Regrettably, as the history recited above reflects, the absence of contact was in part a consequence of repeated judicial error, starting with the erroneous termination of the mother's parental rights in September 2011 and continuing with Family Court's January 2014 directive barring the mother's contact with the children pending resolution of her petitions[6] and the roughly 20 months in which it took the court to adjudicate the issue of whether the mother should be afforded any type of contact, whether that be by phone, electronic means, therapeutic visitation or any other form of contact.[7]

Moreover, although Family Court correctly acknowledged that the best interests of the children were of paramount concern (see Matter of Paige WW. [Charles XX.], 71 AD3d at 1204; Matter of Kathleen OO. [Karen OO.], 232 AD2d 784, 786 [1996]), it made no

---

[6] The permanency goal was changed to return to parent following this Court's October 2013 order. However, Family Court's January 2014 directive resulted in respondent making no real efforts toward the then-goal of return to parent, which goal was later improperly modified by Family Court from return to parent to free for adoption (Matter of Desirea F. [Angela F.], 136 AD3d at 1076-1077).

[7] The Court was advised at oral argument that the first time that the mother was permitted to speak with the children since October 2011 was almost five years later in Family Court in the summer of 2016, when the children apparently appeared telephonically for the required age-appropriate consultation at the remittal hearing following this Court's February 2016 order (Matter of Desirea F. [Angela F.], 136 AD3d at 1076-1077). At the time of oral argument, Family Court had yet to issue a determination on that remittal hearing. The Court was further advised at oral argument that the children and their foster parents no longer live in Pennsylvania, but now live in Iowa.

express finding that supervised visitation, or any other contact, would be detrimental or harmful to the children's welfare. While the record contained some evidence that the mother suffered from medical and/or mental health issues that could impact her interactions with the children, medical or mental health issues do not necessarily preclude supervised visitation, therapeutic visitation or other contact (see generally e.g. Matter of Walter TT. v Chemung County Dept. of Social Servs., 132 AD3d 1170, 1171 [2015]; Matter of Sean K., 50 AD3d 1220, 1222-1223 [2008]). The record did not establish that the mother's medical or mental health issues rose to such a level that an award of supervised visitation or other contact would endanger the welfare of the children, particularly given that Family Court considered, upon the parties' consent, evidence presented in other pending proceedings relating to two of the mother's other children and permitted the mother to have supervised visitation with those other children upon consideration of the same evidence.[8] Thus, even if we were to reach the merits, we would find that the denial of contact lacked a sound and substantial basis in the record.

This Court cannot possibly make the required determination on the record before us. Regrettably, the matter must be remitted for a new hearing on the issue of whether visitation or other contact would be detrimental or harmful to the children's welfare. Given the extraordinary history of this saga, we further conclude that, upon remittal, this matter, as well as any other related proceedings, should be assigned to a new judge.

As a final matter, we deny the mother's request for an order directing that the assigned attorney for the children be removed and replaced upon remittal. We do, however, urge the newly assigned judge to ensure that, upon remittal, there is

---

[8] Family Court's June 2015 bench decision also resolved the petitions relating to two of the mother's other children. The mother has appealed from the resulting orders and those appeals are decided herewith (Matter of Angela F. v Gail WW., ___ AD3d ___ [decided herewith]; Matter of Abigail QQ. [Angela F.], ___ AD3d ___ [decided herewith]).

sufficient and recent attorney-client contact between the children and the attorney for the children so as to ensure the protection of the children's interests (see Family Ct Act § 241). To the extent that any of the parties' remaining contentions have not been addressed, we have reviewed them and find them to be without merit.

Egan Jr., J.P., Lynch, Rose and Aarons, JJ., concur.

ORDERED that the orders are modified, on the law, without costs, by reversing so much thereof as dismissed the petitions seeking visitation with the children; matter remitted to the Family Court of St. Lawrence County for further proceedings not inconsistent with this Court's decision before a different judge, and said proceedings are to be commenced within 30 days of the date of this decision; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court