Matter of Angela H. v St. Lawrence County Dept. of Social Servs. (2020 NY Slip Op 01207)





Matter of Angela H. v St. Lawrence County Dept. of Social Servs.


2020 NY Slip Op 01207


Decided on February 20, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 20, 2020

526043

[*1]In the Matter of Angela H., Appellant,
v
St. Lawrence County Department of Social Services, Respondent. (And Another Related Proceeding.)

Calendar Date: January 13, 2020

Before: Egan Jr., J.P., Lynch, Devine, Aarons and Reynolds Fitzgerald, JJ.


Rural Law Center of New York, Castleton (Keith F. Schockmel of counsel), for appellant.
St. Lawrence County Department of Social Services, Canton (David D. Willer of counsel), for respondent.
Reginald H. Bedell, Willsboro, attorney for the children.



Egan Jr., J.P.
Appeal from an order of the Family Court of St. Lawrence County, (Richards, J.), entered November 22, 2017, which dismissed petitioner's applications, in two proceedings pursuant to Family Ct Act articles 6 and 10, for visitation with the subject children.
The relevant facts and procedural history of this matter are more fully set forth in our decision on an earlier appeal (146 AD3d 1243 [2017]). There is an extensive history of litigation involving petitioner (hereinafter the mother) and two of her children (born in 2003 and 2005), dating back to when the children were initially adjudicated to have been neglected in 2004 and 2006, respectively (Matter of Angela F. v St. Lawrence County Dept. of Social Servs., 146 AD3d at 1243; Matter of Desirea F. [Angela F.], 137 AD3d 1519, 1519 [2016]; Matter of Desirea F. [Angela F.], 136 AD3d 1074, 1079 n 1 [2016]; Matter of Dakota F. [Angela F.], 110 AD3d 1151, 1152 [2013], lv denied 22 NY3d 1015 [2013]; Matter of Dakota F. [Angela F.], 92 AD3d 1097, 1098 [2012]).[FN1] The children were removed from the mother's care in December 2007 and, in 2008, were once again adjudicated to be neglected. The children were initially placed into several different foster homes but, since 2011, they have resided continuously with their current foster parents, who presently reside in Iowa. As relevant here, in 2010, respondent commenced proceedings seeking to terminate the mother's parental rights due to mental illness (see Social Services Law § 384-b [4] [c]). In September 2011, following a hearing, Family Court (Potter, J.) adjudicated the mother to be mentally ill and unable to parent her children and terminated her parental rights. The mother, in turn, has not seen the children since September 2011. In October 2013, this Court reversed Family Court's orders terminating the mother's parental rights and dismissed the underlying petitions (Matter of Dakota F. [Angela F.], 110 AD3d at 1152), effectively reinstating such rights and restoring her to the position she was in prior thereto. The mother then commenced the subject Family Ct Act article 6 and article 10 proceedings seeking to, among other things, reestablish visitation with the children. In 2014, upon the mother's request for any contact with the children pending a hearing on her petitions, Family Court (Morris, J.) denied such request based upon the fact that it had been two years since the mother had last seen the children. Ultimately, in August 2015, following an inexplicably protracted hearing, Family Court dismissed the mother's petitions on the merits.
The mother appealed and this Court once again reversed, finding, among other things, that Family Court had improperly shifted the burden to the mother to prove that visitation was in the child's best interests and that the record otherwise failed to demonstrate the mother's mental health issues were of such severity that visitation with the children would be detrimental or harmful to their welfare (Matter of Angela F. v St. Lawrence County Dept. of Social Servs., 146 AD3d at 1246-1248). The matter was then remitted to Family Court to conduct a new hearing, before a new judge, on the issue of whether visitation or other contact with the children would be detrimental or harmful to their welfare (id. at 1248). Upon remittal, following a hearing held over the course of eight days in February and March 2017, including a Lincoln hearing, in a 54-page decision rendered in November 2017, Family Court (Richards, J.) dismissed the mother's petitions, determining that visitation would be harmful and detrimental to the mental, emotional and psychological health and well-being of the children. The mother appeals.
Initially, we are unpersuaded that the mother's waiver of her right to counsel was not knowing, voluntary and intelligent. As relevant there, "[t]he decision to permit a party who is entitled to counsel to proceed pro se must be supported by a showing on the record of a knowing, voluntary and intelligent waiver of the right to counsel" (Matter of Anthony K., 11 AD3d 748, 749 [2004] [citations omitted]; see Matter of Mitchell WW. [Andrew WW.], 74 AD3d 1409, 1411 [2010]). "[T]he hearing court must perform a searching inquiry to determine whether a party is aware of the dangers and disadvantages of proceeding without counsel, which might include inquiry into the party's age, education, occupation, previous exposure to legal procedures and other relevant factors bearing on a competent, intelligent, voluntary waiver" (Matter of Hensley v DeMun, 163 AD3d 1100, 1102 [2018] [internal quotation marks and citations omitted]; see Matter of Madison County Support Collection Unit v Feketa, 112 AD3d 1091, 1093 [2013]). Upon remittal, Family Court confirmed that the mother was electing to appear pro se. The mother verified that she was accompanied by standby counsel throughout her prior proceedings and that she had asked for and received his advice and counsel on multiple occasions. The mother also acknowledged that she was aware that she would not be treated differently than other attorneys in the proceeding and that she had the right to consult with her standby counsel at any time.[FN2] Moreover, despite this Court having raised concerns in our prior decisions in related matters with respect to the mother's continuing election to proceed pro se (see Matter of Desirea F. [Angela F.], 137 AD3d at 1520; Matter of Desirea F. [Angela F.], 136 AD3d at 1077), the mother has nevertheless continued to represent herself for a number of years, and it is apparent from the record that, although having certain diagnosed mental health issues, she was sufficiently competent and able to engage in legal arguments, render appropriate objections to evidence, cross-examine respondent's witnesses and otherwise effectively advocate on behalf of her case (see Matter of Anthony K., 11 AD3d at 749-750). Accordingly, upon review, we find no error in Family Court permitting the mother to proceed pro se, with the aid of standby counsel.
Turning to the merits, it is axiomatic that visitation with a noncustodial parent is presumed to be in a child's best interests (see Matter of Richard GG. v M. Carolyn GG., 169 AD3d 1169, 1171 [2019]; Matter of Alan U. v Mandy V., 146 AD3d 1186, 1188 [2017]). However, this presumption may be overcome where the party opposing visitation sets forth "compelling reasons and substantial evidence that such visitation would be detrimental or harmful to the child's welfare" (Matter of Lillian SS. [Brian SS.], 146 AD3d 1088, 1095 [2017], lvs denied 29 NY3d 992, 919 [2017]; see Matter of Dharamshot v Surita, 150 AD3d 1436, 1437 [2017]; Matter of Victoria X., 34 AD3d 1117, 1118 [2006], lv denied 8 NY3d 806 [2007]). "Although not determinative, the expressed wishes of the children are some indication of what is in their best interests, considering their age, maturity and potential to be influenced" (Matter of Heather SS. v Ronald SS., 173 AD3d 1271, 1272 [2019] [internal quotation marks and citations omitted]; see Matter of Manell v Manell, 146 AD3d 1107, 1108-1109 [2017]). "The propriety of visitation is left to the sound discretion of Family Court, guided by the best interests of the children, and its decision will not be disturbed where it is supported by a sound and substantial basis in the record" (Matter of Heather SS. v Ronald SS., 173 AD3d at 1272 [internal quotation marks, brackets and citations omitted]).
At the fact-finding hearing, respondent offered the testimony of Michael Small, a clinical neuropsychologist, who conducted a court-ordered comprehensive neuropsychological evaluation of the mother over the course of three days in July and September 2016, including a home visit and collateral interviews with the mother's husband and a former treatment provider, and issued a corresponding report in January 2017. Small diagnosed the mother as suffering from, among other things, a personality disorder with features of five separate personality disorders, predominantly borderline, paranoid, schizotypal, narcissistic and antisocial features. Small explained that a personality disorder "is a long-standing pervasive condition that disrupts a person's thinking, their emotional self-regulation, their ability to conduct relationships, their ability to control impulses . . . [and] represents a significant impairment in core areas of a person's life." Based on his evaluation and diagnosis, Small recommended that the mother engage in further mental health treatment, including consultation with a speech pathologist to address logorrhea (incessant speaking) and graphorrhoea (incessant writing), consultation with a psychiatrist with expertise in prescribing psychotropic medications for persons with personality disorders, engaging in weekly individual therapy with a clinician who is experienced in working with personality disorders and "commit[ting] to a routine of serious participation in therapy over a prolonged course." Small testified that, although the mother had engaged in mental health treatment in the past and made certain progress in overcoming issues of anxiety and depression, her personality disorder persisted and, at present, remains "largely unaddressed" and, at a minimum, will require at least a three-year course of treatment. Small further opined that the mother's diagnosis "would have an effect on [her] interaction with the children," specifically, he opined that it could "have a detrimental effect on her ability to provide for children in her care, especially with respect to the negative impact on their social and psychological maturation and their emotional stability."
The mother testified on her own behalf and repeatedly denied that she suffered from a personality disorder or that she needed any mental health intervention in this regard. Indeed, although the mother has engaged in some services offered by respondent and made certain strides in improving her situation, including obtaining a college degree, pursuing a Master's degree, getting married, obtaining unsupervised contact with her youngest child and maintaining two, part-time positions, the record is nevertheless replete with evidence that, throughout the mother's prolonged history of involvement with respondent up to and including the present, she has consistently engaged in inappropriate behavior and exhibited questionable judgment that directly corresponds with features of her untreated mental health diagnosis. Testimony from one of respondent's caseworkers who worked with the mother and the children between January 2008 and October 2011 — when the mother last had visitation with the children — revealed that the mother's unsupervised visitation was terminated when it was discovered that she was having inappropriate conversations with the children and used vulgar and foul language with caseworkers in front of the children. During the subsequent period of supervised visitations, the caseworker observed — and visitation logs maintained by respondent confirm — that the mother often arrived late and/or left early from visitation, occasionally canceled visitation after the children had already arrived, was combative with visitation supervisors and caseworkers, was frequently unable to handle the behavior of the children and failed to engage in age appropriate communications.
Although the mother subsequently sought mental health treatment from numerous mental health providers during the ensuing years, she acknowledged that this was, at least in part, a product of an addiction that she developed to Ativan and that she was deliberately selective in the information that she would share to providers as she was "doctor shopping" in an effort to expand her access to Ativan. Further, various letters and communications received into evidence, including communications between the mother and the children's former caseworker, online communications between the mother and the oldest child wherein she disparaged the oldest child's family and provided age-inappropriate details of her prior sex offense conviction involving a 15-year-old child — for which she is designated as a risk level one sex offender — as well letters from the mother to both the attorney for the children and the prior Family Court judge, minimizing the nature of her criminal conduct and attempting to shift the blame to the victim thereof, demonstrate the effect that her mental illness has on her decision-making capabilities. When confronted with this conduct at the hearing, the mother minimized her behavior, attempted to provide rational explanations and excuses and deflected blame, indicating a clear lack of insight into the inappropriate nature of her conduct and/or communications. Further, despite the fact that her children were removed in December 2007 and that she has not seen or had any significant contact with them since 2011, the mother has failed to prioritize the best interests of the children ahead of her own self-interest. Most significantly, she continues to deny her diagnosis and has expressly declined to engage in the recommended mental health treatment to address the underlying reasons for why the children were removed from her care in the first instance.
Accordingly, upon review of the evidence introduced at the fact-finding hearing, we find that the mother's continued failure to recognize or take responsibility for the effect that her mental health issues has on her ability to maintain proper boundaries and relationships demonstrates a troubling lack of insight and parental judgment and, in consideration thereof, we find no abuse of discretion in Family Court's determination that visitation with the mother would pose a significant risk to the mental, emotional and psychological health and well-being of the children (see Matter of Attorney for the Children v Barbara N., 152 AD3d 903, 906 [2017]). We further note that, although not determinative (see Matter of Marcia ZZ. v April A., 151 AD3d 1303, 1306 n [2017]), the attorney for the children opposes visitation. Giving deference to Family Court's factual and credibility determinations, and considering the transcript of the Lincoln hearing, we find that Family Court's denial of visitation to the mother is supported by a sound and substantial basis in the record (see Matter of Attorney for the Children v Barbara N., 152 AD3d at 906).
Lynch, Devine, Aarons and Reynolds Fitzgerald, JJ., concur.
ORRDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The mother has two other children, her oldest child and her youngest child, who, although involved in other Family Court proceedings involving respondent, are not subject to the present appeal.

Footnote 2: Upon inquiry, standby counsel indicated that he was satisfied with the mother's involvement in the proceedings and that they had "a good working relationship."