Matter of Kody II. v Shaunta JJ.

2026 NY Slip Op 03044

May 14, 2026

Appellate Division, Third Department

Mackey, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of Kody II., Appellant.

v

Shaunta JJ., Respondent. Attorney for the Child, Appellant.

Decided and Entered:May 14, 2026

CV-26-0109

Calendar Date: April 29, 2026

Before: Garry, P.J., Pritzker, Reynolds Fitzgerald, Powers And Mackey, JJ.

Whiteman Osterman & Hanna LLP, Albany (Samantha M. Choppa of counsel), for Kody II., appellant.

Michelle I. Rosien, Philmont, attorney for the child, appellant.

[*1]

Mackey, J.

Appeals (1) from an order of the Family Court of Columbia County (Michael Howard, J.), entered January 13, 2026, which, among other things, in a proceeding pursuant to Family Ct Act article 6, granted respondent temporary physical custody of the parties' child, and (2) from an order and a corrected decision and order of said court, entered January 15, 2026 and January 22, 2026, which dismissed petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of the parties' child.

This child custody matter presents an issue of first impression centered upon a question of jurisdictional priority at the convergence of the Indian Child Welfare Act (see 25 USC § 1901 et seq., as added by Pub L 95-608, 92 Stat 3069 [hereinafter ICWA]), the Uniform Child Custody Jurisdiction and Enforcement Act (see Domestic Relations Law art 5-a [hereinafter UCCJEA]), and competing state and tribal laws.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the unwed parents of the subject child (born in 2022). The mother is a member of the Navajo Nation such that the child is also a member by ancestry. The child was born in New Mexico but lived on the Navajo Nation reservation in Utah (hereinafter the reservation) with the mother until she was roughly eight months old. Thereafter, in March 2023, the mother and the child relocated to New York to reside with the father. One year later, the mother returned to the reservation, where she has since remained. The child, however, continued to reside with the father in New York.

Shortly after her return to the reservation, the mother filed a pro se petition for a domestic abuse protection order (hereinafter DAPO) and a temporary order of protection against the father in the Family Court of the Navajo Nation, Judicial District of Aneth, Utah (hereinafter the Navajo Court). The Navajo Court granted the mother a temporary order of protection, as well as temporary sole custody of the child. On March 26, 2024, the father was served with notice of a DAPO hearing to be held in April 2024 in the Navajo Court. The next day, the father petitioned, by order to show cause, for emergency temporary sole custody of the child in the Family Court of Columbia County, disclosing that the child was the subject of ongoing legal proceedings in the Navajo Court. Following a hearing two days later, at which the father and the attorney for the child (hereinafter AFC) were present and the issue of jurisdiction was raised and discussed extensively, Family Court issued a temporary order awarding sole legal and physical custody of the child to the father upon the basis that "the Utah court" did not have jurisdiction.

Meanwhile, the father submitted a written response to the Navajo Court, denying the mother's abuse allegations underlying the then-pending DAPO petition. The father thereafter failed, however, to appear before the Navajo Court for the April 2024 DAPO hearing. As a result, the Navajo Court [*2]issued an order upon the father's default that prohibited direct communication between the mother and the father and, despite the father not having been on notice that the issue of custody was to be addressed, granted the mother sole legal and physical custody of the child. We note that the record reflects that a second DAPO hearing notice was issued with an updated hearing time, supporting the father's assertion that his failure to appear was the result of confusion.

In May 2024, Family Court issued another temporary order, upon the agreement of the parents and the AFC, granting sole legal and physical custody to the father with parenting time to the mother via phone and/or video calls.FN1 The father thereafter amended his original custody petition, raising concerns regarding the mother's living conditions. The parties' litigation continued throughout the remainder of 2024 and into 2025, focused upon the issue of jurisdiction. On this issue, in June 2025, the parents, represented by counsel, executed and filed a stipulated motion in the Navajo Court to modify the DAPO to allow for direct communication between the parents and further stipulating that "[m]atters pertaining to child custody . . . shall be addressed [and] resolved exclusively" in the Family Court of Columbia County. That November, the Navajo Court issued an order permitting direct communication between the parents regarding the child, but requested additional briefing on the issue of jurisdiction.

Subsequently, during an appearance before Family Court on January 13, 2026, the court suddenly, and without having been so prompted by the parties or conducting a best interests hearing, concluded that the mother "ought to have custody of her child" and issued a temporary order awarding the parents joint legal custody, but transferring primary physical custody to the mother with parenting time to the father. The father and the AFC immediately appealed from that order and, the next day, the father moved this Court for an emergency stay. That same day, this Court signed an order to show cause staying the proceedings and reinstating Family Court's May 2024 order granting primary physical custody to the father, pending a final determination on the motion. At that point, however, the child was already travelling to the reservation with the mother, despite the father attempting to intercept the mother with the child at a Colorado airport with this Court's order.

The following day, on January 15, 2026, the Navajo Court and Family Court held a conference, in the absence of the parties, during which Family Court expressed its intent to relinquish jurisdiction to the Navajo Court and "make the appeal [to this Court] moot." Accordingly, that same day, Family Court entered an order dismissing the father's petition, with prejudice, for lack of jurisdiction. The court's written decision and order clarified the basis for its determination, concluding that the Navajo Court had exclusive jurisdiction under [*3]ICWA. A corrected decision and order was entered several days later. In February 2026, this Court granted a preliminary injunction but denied the father's related request for return of the child, without prejudice. The father and the AFC each appeal from the January 13, 2026 temporary order, the January 15, 2026 order of dismissal, and the January 22, 2026 corrected decision and order.

At the outset, we find that ICWA is not applicable to the circumstances presented here. "In 1978, Congress enacted [ICWA] out of concern that 'an alarmingly high percentage of Indian families [were being] broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies' " (Haaland v Brackeen, 599 US 255, 265 [2023], quoting 25 USC § 1901 [4]; see Matter of Dupree M. [Samantha Q.], 171 AD3d 752, 753 [2d Dept 2019]). Addressing these concerns, the stated purpose of ICWA is "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, and by providing for assistance to Indian tribes in the operation of child and family service programs" (25 USC § 1902). Accordingly, "[a]t the heart of . . . ICWA are its provisions concerning jurisdiction over Indian child custody proceedings" (Mississippi Band of Choctaw Indians v Holyfield, 490 US 30, 36 [1989]; see 25 USC §§ 1903, 1911) and, where ICWA is applicable, state courts "shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings" (25 USC § 1911 [d]). To this end, New York amended section 39 of the Social Services Law and promulgated state regulations (see 18 NYCRR 431.18) to comply with the federal law.

There is no question that the subject child is an " 'Indian child' " within the meaning of ICWA, as she is unmarried, under the age of 18 and "is either . . . a member of an Indian tribe or . . . is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe" (25 USC § 1903 [4]). In relevant part, ICWA mandates that "[a]n Indian tribe shall have jurisdiction exclusive as to any [s]tate over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe" (25 USC § 1911 [a] [emphasis added]). Significantly, however, by its own language ICWA defines a "child custody proceeding" subject to ICWA's restrictions as "foster care placement," "termination of parental rights," "preadoptive placement" or "adoptive placement" (25 USC § 1903 [1] [i]-[iv] [internal quotation marks omitted]). However, statutory language expressly mandates that the term "shall not include . . . an award, in a divorce proceeding, of custody [*4]to one of the parents" (25 USC § 1903 [1]). Consistent with its stated purpose to address concerns with the governmental removal of an Indian child from his or her tribal home, relevant federal regulations provide that ICWA does not apply to "[a]n award of custody of the Indian child to one of the parents including, but not limited to, an award in a divorce proceeding" (25 CFR 23.103 [b] [3]; see 25 USC § 1903 [1]). The published guidelines of the Federal Bureau of Indian Affairs regarding the intended application of ICWA are similarly informative, instructing state courts that, as "the Act specifically exempts from ICWA's applicability awards of custody to one of the parents 'in divorce proceedings,' the exemption necessarily includes awards of custody to one of the parents in other types of proceedings as well," such that "ICWA does not apply to an award of custody to one of the parents, in a divorce proceeding or otherwise" (81 Fed Reg 38800 [2016], codified at 25 CFR 23 et seq., quoting 25 USC § 1903 [1]). A " 'parent' " is in turn defined under ICWA as "any biological parent or parents of an Indian child" but "does not include the unwed father where paternity has not been acknowledged or established" (25 USC § 1903 [9]).

Under this framework, we conclude that ICWA is inapplicable to the custody proceeding at issue here, inasmuch as it concerns solely competing petitions for custody by the child's parents — there is no application for the governmental removal of the child from either parent or for the termination of parental rights (see 25 USC § 1903 [1]; 25 CFR 23.103 [b]; see also Adoptive Couple v Baby Girl, 570 US 637, 649 [2013]; Cherino v Cherino, 143 NM 452, 454 [NM Ct App 2007]). We find no legal authority to support the mother's position that we should instead adopt the Navajo Court's contrary interpretation of ICWA. Although the Navajo Court's custody order characterizes the father as a "legal stranger" to the child, apparently because of his alleged failure to comply with the Navajo Court's requirement that he provide "a declaration of paternity," the record reflects that the father is listed on the child's New Mexico birth certificate and there is no indication that his paternity is otherwise in dispute.FN2 Nothing in ICWA's relevant statutory language or regulatory framework requires that paternity, for purposes of ICWA's application, be acknowledged according to the laws of the specific Indian tribe at issue where paternity has otherwise already been established and is undisputed (see 25 USC § 1903 [9]; 25 CFR 23.2).FN3

Notwithstanding our conclusion that ICWA does not grant jurisdiction of this custody matter to the Navajo Court, it is undisputed that the Navajo Court can still assert jurisdiction under its own tribal law by virtue of the child's tribal status. At the same time, the mother concedes that Family Court likewise has jurisdiction. Thus, our determination distills to a question of jurisdictional priority.

The UCCJEA is [*5]codified in article 5-A of the Domestic Relations Law and serves "to provide an effective mechanism to obtain and enforce orders of custody and visitation across state lines" (Domestic Relations Law § 75 [2]). To this end, even where, as here, an Indian tribe has declined to adopt its provisions, the UCCJEA requires that tribal court custody determinations made in "substantial conformity with the jurisdictional standards" of its provisions be afforded full faith and credit (Domestic Relations Law § 75-c [3]; see Matter of Kawisiiostha N. v Arthur O., 170 AD3d 1445, 1446 [3d Dept 2019]). Thus, where simultaneous proceedings have been commenced in the tribal court's jurisdiction in substantial conformity with the UCCJEA, this state's court "shall stay its proceeding and communicate with the [tribal] court" and, if this state's court is not determined to be "a more appropriate forum, the court of this state shall dismiss the proceeding" (Domestic Relations Law § 76-e [2]).

Pursuant to the UCCJEA, whether this state's courts have jurisdiction to make an initial custody determination turns upon, as relevant here, whether "this state is the home state of the child on the date of the commencement of the proceeding" (Domestic Relations Law § 76 [1] [a]). " 'Home state' means the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding" (Domestic Relations Law § 75-a [7]). A "child custody proceeding" is in turn defined as "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue" and includes "a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights and protection from domestic violence" (Domestic Relations Law § 75-a [4]).

We agree with the father and the AFC that New York is the child's "home state" pursuant to the UCCJEA. It is undisputed that, at the time of the commencement of the custody proceedings in New York, the child had been living in this state with the father since she was approximately eight months old and, thus, for well over the requisite six-month period (see Domestic Relations Law §§ 75-a [7]; 76 [1] [a]). Indeed, the child had resided in this state with the father for the majority of her life. Although we find that the DAPO proceeding before the Navajo Court constitutes a "proceeding concerning the custody of the child" within the meaning of the UCCJEA for purposes of preemption, and that it had already been commenced at the time when the father commenced his proceeding in Family Court (Domestic Relations Law § 76-e [1]), the Navajo Court's exercise of jurisdiction over that proceeding was not in substantial conformity with the UCCJEA's provisions (see Domestic Relations Law § 76-e [1]-[2]; Matter of Michael McC. v Manuela A., 48 AD3d 91, 97 [1st Dept 2007], lv dismissed 10 NY3d 836 [2008]). Specifically, [*6]the Navajo Nation Code provides that "[t]he [Tribal Court] may hear child custody matters involving Navajo children wherever they may arise" (9 NNC 1055 [d]), such that "[i]t is . . . the child's status as a Navajo, not her presence within the Navajo Nation that allows for jurisdiction" (Miles v Chinle Family Court, 7 Am Tribal Law 608, 612 [Sup Ct, Navajo Nation 2008]). Because that assertion of jurisdiction is not in conformity with the UCCJEA, and, as this state is the child's "home state" within the meaning of the UCCJEA, there was no basis for this state to cede jurisdiction to the Navajo Court. Accordingly, we reverse Family Court's order dismissing the father's custody petition upon this basis (see Domestic Relations Law §§ 75-a [7]; 75-c [3]; 76 [1] [a]; 76-e [1]-[2]).FN4

Having determined that this state holds jurisdictional priority, we next address Family Court's sua sponte issuance of the January 13, 2026 temporary order of custody granting, among other things, physical custody of the child to the mother without a hearing. "[A]s a general matter, custody determinations should be rendered only after a full and plenary hearing" (S.L. v J.R., 27 NY3d 558, 564 [2016]; see Matter of Matthew TT. v Erin TT., 222 AD3d 1242, 1242-1243 [3d Dept 2023]). Notwithstanding Family Court's "broad discretion to make temporary emergency placement decisions" (Matter of Michael A. [Patricia A.], 79 AD3d 1230, 1231 [3d Dept 2010] [internal quotation marks and citation omitted; emphasis added]), this general rule applies to a "temporary change of custody in a nonemergency situation" (Matter of Martin R.G v Ofelia G.O., 24 AD3d 305, 305 [1st Dept 2005]; compare Matter of Kenneth J. v Lesley B., 165 AD3d 439, 440 [1st Dept 2018]) and "furthers the substantial interest, shared by the State, the children, and the parents, in ensuring that custody proceedings generate a just and enduring result that, above all else, serves the best interest[s] of a child" (S.L. v J.R., 27 NY3d at 563). The narrow exception to the hearing requirement is applicable "where no hearing is requested and the court has sufficient information to undertake a comprehensive independent review of the child's best interests" (Matter of Schroll v Wright, 135 AD3d 1028, 1029 [3d Dept 2016] [internal quotation marks and citations omitted]; see S.L. v J.R., 27 NY3d at 564).

We agree with the father and the AFC that Family Court erred in transferring physical custody of the child from the father to the mother — sua sponte setting aside the May 2024 temporary order issued upon the parties' consent — without a fact-finding hearing.FN5 The record reflects that there was no emergency situation at that time and no party had moved the court to take any such action. Moreover, the father raised significant health and safety concerns as to the mother's living conditions in his amended custody petition, which the AFC notes were never refuted by the mother who instead argued that the allegations were a matter of [*7]cultural differences. These competing positions, as they relate to the child's best interests, were never explored before Family Court. To the extent that the mother asserts that the DAPO hearing before the Navajo Court addressed the child's best interests and related concerns, we note that there is no indication in the record that the father was on notice that custody of the child was to be addressed at that hearing. Accordingly, we reverse the temporary custody order entered January 13, 2026 and remit the matter to Family Court to conduct a full hearing on the father's custody petition and the best interests of the child. Upon remittal, this matter, as well as any other related proceedings, should be assigned to a new judge (see Matter of Nicole TT v David UU., 174 AD3d 1168, 1172 [3d Dept 2019]; Matter of Angela F. v St. Lawrence County Dept. of Social Servs., 146 AD3d 1243, 1248 [3d Dept 2017]). Under the circumstances, the May 13, 2024 order giving the father immediate sole legal and physical custody will remain in effect pending further proceedings. We therefore direct the mother to return the child to the father in New York within 20 days of service of this order, and the father shall promptly reimburse the mother for the related transportation costs.

In light of our determination, the parties' remaining contentions either need not be addressed or have been considered and found unpersuasive.

Garry, P.J., Pritzker, Reynolds Fitzgerald and Powers, JJ., concur.

ORDERED that the order and the corrected decision and order entered January 15, 2026 and January 22, 2026 are reversed, on the law, without costs, and petitioner's custody petition is reinstated.

ORDERED that the order entered January 13, 2026 is reversed, on the law, without costs, and matter remitted to the Family Court of Columbia County before a different judge for further proceedings not inconsistent with this Court's decision and, pending said proceedings, the May 13, 2024 order shall remain in effect as a temporary order.

ORDERED that within 20 days of the date of service of this order respondent shall return the subject child to petitioner in New York, and petitioner shall promptly reimburse respondent for the related transportation costs.

Footnotes

Footnote 1

Family Court clarified that such contact would not be considered a violation of the DAPO.

Footnote 2

The record demonstrates that the mother submitted the child's birth certificate, bearing the father's name, to the Navajo Court and that she also referred to him as "the father" in her motion to modify the DAPO. The father also submitted the child's birth certificate to Family Court in support of his March 2024 custody petition. Additionally, he submitted a sworn acknowledgment of paternity to this Court together with his stay application.

Footnote 3

In view of our determination, we need not address the potential implications of the child's residency and/or domicile, whether now or at the time of the challenged orders, for purposes of ICWA.

Footnote 4

"While a party cannot bestow subject matter jurisdiction by waiver or stipulation" (Arnold v Harari, 4 AD3d 644, 646 [3d Dept 2004]), the parties' motion before the Navajo Court stipulating that "[m]atters pertaining to child custody . . . shall be addressed [and] resolved exclusively in the Family Court of the State of New York" further supports finding this state to be the proper jurisdiction for purposes of child custody matters (see id.; see also Matter of Mahoney v Hughes, 227 AD3d 908, 909 [2d Dept 2024]).

Footnote 5

We reject the mother's contention that the AFC improperly substituted her judgment for that of the child on the issue of custody, in view of her young age, reported speech delays and difficulty communicating (see Matter of Audreanna VV. v Nancy WW., 158 AD3d 1007, 1011 [3d Dept 2018]).